### 51120. LOWE v. THE STATE.

CLARK, Judge.

This appeal presents two questions: (1) Was the identification in open court of the defendant as being the culprit valid? (2) Was the cross examination over objection of defendant concerning his failure previously to disclose his whereabouts on the evening of the offense prejudicial to the extent of requiring a new trial? Since there was no taint of "impermissible suggestion" as to the identification (even though it occurred during the trial), the first question is answered in the affirmative.

Similarly, the second question must be answered in the affirmative under the facts here on the basis of the manner in which silence during custodial interrogation is regarded by the United States Supreme Court.

Defendant was tried upon two indictments charging aggravated battery, aggravated assault and two misdemeanor pistol offenses. His first trial resulted in a conviction which this court reversed on the ground that defendant had not been afforded his full statutory allowance of peremptory challenges. *Lowe v. State,* 133 Ga. App. 420 (210 SE2d 869). At the second trial, defendant was again convicted of the felony of aggravated battery and the misdemeanor of carrying a pistol without a license. The case comes to this court from the denial of defendant's motion for a new trial. *Held:*

1. We deal first with the error enumerated upon the allowance of the in-court identification testimony of witness Thompson. Shortly after defendant's arrest, this witness was shown six pictures, but was unable to identify defendant positively as the assailant. At the subsequent preliminary hearing, however, the defendant was identified. It is argued that the identification of defendant by witness at the preliminary hearing was impermissibly suggestive in that it was influenced by the witness' acknowledged assumption that the assailant would be present. Defendant further asserts that the in-court trial identification was tainted by the earlier identification at the preliminary hearing.

Our United States Supreme Court has considered in numerous cases the scope of due process protection against the admission of evidence deriving from suggestive identification procedure. See Stovall v. Denno, 388 U. S. 293 (87 SC 1967, 18 LE2d 1199); Foster v. California, 394 U. S. 440 (89 SC 1127, 22 LE2d 402); Coleman v. Alabama, 399 U. S. 1 (90 SC 1999, 26 LE2d 387); Neil v. Biggers, 409 U. S. 188 (93 SC 375, 34 LE2d 401). We think it clear that this line of cases, involving allegedly suggestive pre-trial identifications, has no application to the courtroom identification complained of here.[1]

---

[1]The general rule which has developed from these

Defendant here does not contend that the initial picture spread shown to the witness was impermissibly suggestive. The allegedly improper identification procedure was that which occurred at the preliminary hearing. We know of no authority, however, which would prohibit, as unduly suggestive, an exclusively in-court identification and defendant has cited no cases in support of this novel proposition.

It is well established that a pre-trial identification is not required as a condition precedent to an in-court identification. *Puckett v. State,* 233 Ga. 449 (211 SE2d 740) and cits. The witness' failure to identify defendant's photograph does not, therefore, preclude a subsequent identification either at the preliminary hearing or at the trial.

We note additionally that the witness was able to identify defendant at trial from his independent recollection of the assault and battery. Immediately prior to the shooting, the witness was looking directly at the assailant from a distance of twelve inches and was able to see him clearly. While the witness could not identify defendant from the photographic spread, he recognized defendant as the assailant immediately upon defendant's courtroom entry at the preliminary hearing. The witness' initial failure to pick out defendant's picture was, of course, a proper subject of cross examination and the reliability of the subsequent identifications was an issue for the jury's determination. This enumeration is therefore without merit.

2. Defendant testified in his own behalf denying that he was the assailant. He also stated that he was unable to remember where he was at the time of the January 4

cases is that "convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic indentification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." Simmons v. United States, 390 U. S. 377, 384 (88 SC 967, 19 LE2d 1247).

shooting. On cross examination, the prosecutor asked a series of questions concerning the defendant's failure to inform the police of his whereabouts at the time of the crime. Illustrative of the nature of the prosecutor's examination are the following questions asked of the defendant, which we quote from the trial transcript: Q. When you were arrested, Mr. Lowe, January 13th, 1974, did you tell anybody at that time where you were on January 4? A. No. Q. Mr. Lowe, on the next morning after you were arrested, when they told you you were charged with shooting a furniture collector on January 4, down at 934 Washington Street, did you at that time tell anybody where you were at that time? A. No. The trial court permitted this line of inquiry over defense counsel's objection that the questions were impermissible as violating defendant's right to remain silent during police interrogation.

The issue presented is governed by the recent (June 23, 1975) United States Supreme Court case of United States v. Hale,—U. S.—(95 SC 2133, 45 LE2d 99). There the prosecutor attempted to impeach defendant's explanation of his possession of stolen money by asking him to admit that he had not offered the exculpatory information to the police at the time of his arrest. Although the trial court excluded this testimony as improper and cautioned the jury to disregard it, the Court of Appeals for the District of Columbia Circuit held that the error was of such gravity that the curative instruction was not available and that a mistrial should have been granted. On certiorari, the Supreme Court affirmed the appellate court's ruling on the basis that the probative value of defendant's pre-trial silence was outweighed by the prejudicial impact of admitting it into evidence.

The court noted that while a witness may be impeached by his prior inconsistent statements, the court, as a preliminary matter, must first be persuaded that the statements are in fact inconsistent. "If the Government fails to establish a threshold inconsistency between silence at the police station and later exculpatory testimony at trial, proof of silence lacks any significant probative value and must therefore be excluded." United States v. Hale, 45 LE2d 104, supra.

Under some circumstances, a defendant's prior silence may be inconsistent with his trial testimony. Where, for example, the defendant consents to police questioning following his arrest, but fails to inform the authorities of the alibi he relies upon at trial, the defendant's previous silence on this subject may be indicative of recent fabrication. Thus, in *Johnson v. State,* 235 Ga. 355, where the defendant apparently consented to police interrogation, it was held proper for the prosecutor to inquire as to whether the defendant informed the detective of the alibi raised at trial.

Unlike the situation in *Johnson,* the defendant here gave no statements to the police. Under such circumstances, the arrestee's failure to offer information to the authorities "can as easily be taken to indicate reliance on the right to remain silent as to support an inference that the explanatory testimony was a later fabrication. There is simply nothing to indicate which interpretation is more probably correct." United States v. Hale, 45 LE2d 105, supra.

The defendant's inability to remember his whereabouts at the time of the offense is not something that an arrestee would communicate to the police in the normal course of events. Here, the testimony given by the defendant on direct examination was not, as the state contends, "an obvious attempt to claim an alibi without specifying any fact which the State could disprove in derogation of the alibi." (State's first brief, p. 23). In its cross examination, however, the prosecution treated the defendant's inability to recall his whereabouts as a recent alibi assertion. The clear import of the cross examination was that the defendant's failure to talk with the police after his arrest was, in some sense, indicative of his guilt and inconsistent with his present assertion of innocence.[2]

---

[2]At page 22 of the first of three excellent briefs, the state concedes the prejudicial import of its questioning: "The obvious thrust of the prosecutor's comments was that this story was a recent fabrication. If that is the inference which the jury drew, then the questions were permissible, as was the inference drawn."

"Not only is evidence of silence at the time of arrest generally not very probative of a defendant's credibility, but it also has a significant potential for prejudice. The danger is that the jury is likely to assign much more weight to the defendant's previous silence than is warranted. And permitting the defendant to explain the reasons for his silence is unlikely to overcome the strong negative inference that the jury is likely to draw from the fact that the defendant remained silent at the time of his arrest."[3] United States v. Hale, 45 LE2d 107, supra.

Our court said in *Reid v. State,* 129 Ga. App. 660 (5) (200 SE2d 456) that, "Evidence as to silence on the part of the defendant should be excluded when objected to, for he is then entitled to remain silent, and the prosecution may not use against him the fact that he stood mute or claimed his privilege. [Cit.]"

We thus conclude that the questions complained of were both irrelevant and highly prejudicial. We also note that this type of examination raises serious constitutional questions involving a defendant's Fifth Amendment right to remain silent following arrest. Additionally, the allowance of this type of examination undermines the requirements of Miranda v. Arizona, 384 U. S. 436 (86 SC 1602, 16 LE2d 694), and curtails the due process rights otherwise afforded to criminal defendants. "[W]hen a person under arrest is informed, as Miranda requires, that he may remain silent, that anything he says may be used against him and that he may have an attorney if he wishes, it seems to me that it does not comport with due process to permit the prosecution during the trial to call attention to his silence at the time of arrest and to insist that because he did not speak about the facts of the case at that time, as he was told he need not do, an unfavorable inference might be drawn as to the truth of his trial

---

[3]In Hale, the trial judge, while refusing to declare a mistrial, did exclude the prejudicial questioning and also gave the jury corrective instructions. In contrast, the trial judge here ruled that the testimony was admissible. Thus the prejudicial impact here must be considered even greater than in Hale.

testimony. [Cit.] Surely [the defendant] was not informed here that his silence, as well as his words, could be used against him at trial. Indeed, anyone would reasonably conclude from Miranda warnings that this would not be the case." United States v. Hale, 45 LE2d 108, supra, (concurrence of Justice White).

The trial court's refusal to exclude the prejudicial questioning was error requiring a new trial.

3. As the remaining enumerations of error were not argued or involve matters not likely to re-occur at a new trial, they need not be considered.

*Judgment reversed. Pannell, P. J., and Quillian, J., concur.*

ARGUED SEPTEMBER 4, 1975 — DECIDED OCTOBER 22, 1975 — REHEARING DENIED NOVEMBER 19, 1975 — 

*Jack Dorsey,* for appellant.

*Lewis R. Slaton, District Attorney, Joseph J. Drolet, H. Allen Moye, Assistant District Attorneys,* for appellee.