A99A1285. THOMPSON v. THE STATE.
A99A1297. DRISCOLL v. THE STATE.
(521 SE2d 876)

McMURRAY, Presiding Judge.

Following their indictments for armed robbery (Count 1), kidnapping (Count 2), burglary (Count 3), false imprisonment (Counts 4-7), possession of a firearm during the commission of a felony

(Count 8), and impersonating a public officer (Count 9), defendant Jerome Stanley Thompson and co-defendant John N. Driscoll ("defendant" and "Driscoll," respectively; "defendants" collectively) were jointly tried by a jury and found not guilty of Counts 1 and 2, guilty of Counts 5, 6, and 7 (false imprisonment), and guilty of Count 9 (impersonating a public officer).[1] The trial court denied defendants' motions for new trial, and separate appeals followed. Because the instant appeals were filed separately, but involve similar issues of law arising out of the same operative facts, the two cases are hereby consolidated for disposition on appeal. *Held*:

## Case Nos. A99A1285 and A99A1297

1. Defendants challenge the sufficiency of the evidence to support their convictions for false imprisonment, arguing there is no evidence that defendants held the victims against their will.

"On appeal from a criminal conviction, the evidence must be construed in the light most favorable to the verdict, and the appellant[s] (defendant[s] here) no longer enjoy[] a presumption of innocence; moreover, an appellate court does not weigh the evidence or determine witness credibility but only determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560). Conflicts in the testimony of witnesses, including the State's witnesses, [are] a matter of credibility for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld." (Citations and punctuation omitted.) *Turner v. State*, 223 Ga. App. 448, 449 (1) (a) (477 SE2d 847).

*Howard v. State*, 227 Ga. App. 5, 8 (6) (a) (488 SE2d 489).
Viewed in this light, the evidence at defendants' trial pertinently revealed the following: Raul Briones lived with his brother, Celerino Briones, and three friends, Gerardo Mata, Ricardo Mata, and Gerardo Pardo ("the victims"), at 149 Harris Circle, Lawrenceville. At about 2:00 a.m., November 14, 1997, Raul Briones returned home from a bar, found his brother and three friends asleep, and went to bed. About one hour later, Amanda Stanton, a Harris Circle resident, noticed that a suspicious vehicle had twice driven down her street with its lights off and then parked. She saw three individuals get out, put on dark clothing and walk toward the house where the Hispanic

---

[1] The State dismissed Counts 3 and 4. Count 8 was dismissed by the trial court.

males lived. Seeing this, Stanton called the police. At or about the time she did so, Raul Briones was awakened by knocking at the front door and the words "the police" being shouted.

While Raul Briones was still in bed, defendant Driscoll, a white man dressed in black and wearing a badge, entered Raul Briones' room and, at gunpoint, ordered him "to go with the other one to the living room." While leaving the bedroom, Raul Briones saw defendant Driscoll remove Raul Briones' wallet from a pocket of the pants the victim was forced to leave behind. Driscoll took $600-$700, without Raul Briones' consent.

Raul Briones went to the living room in fear. There, he found his brother and friends. Defendants and a third man, Spencer Wilkes,[2] were armed, dressed in black, and wearing police badges. According to Raul Briones, his brother and friends appeared afraid.

On cross-examination, defendant Thompson testified that he, defendant Driscoll and Wilkes had all the residents in the living room for about five minutes before the police arrived. Defendant Thompson questioned them and made them produce identification. According to defendant Thompson, defendant Driscoll left his badge, gun, a black T-shirt and jacket in the kitchen before going outside to meet the police as they arrived. Defendant Thompson removed his own black outer clothing as Wilkes fled the house.

"The testimony of a single witness is generally sufficient to establish a fact." OCGA § 24-4-8. "A person commits the offense of false imprisonment when, in violation of the personal liberty of another, he arrests, confines, or detains such person without legal authority." OCGA § 16-5-41 (a). In the cases sub judice, evidence that defendants detained the victims under arms and color of authority is sufficient under the standard of *Jackson v. Virginia*, supra, to authorize the jury verdicts that both defendants Thompson and Driscoll are guilty, beyond a reasonable doubt, of false imprisonment as alleged in Counts 5, 6, and 7 of the indictment. *Mayorga v. State*, 225 Ga. App. 496, 497 (484 SE2d 292).

2. Defendant Driscoll challenges the sufficiency of the evidence regarding his conviction for impersonating a public officer, arguing there is no evidence he entered the house shouting "police" or "policia," or that he wore a police badge.

"A person who falsely holds himself out as a peace officer or other public officer . . . with intent to mislead another into believing that he is actually such officer commits the offense of impersonating an officer." OCGA § 16-10-23. Raul Briones identified defendant Driscoll as the man who burst into his bedroom, who wore a police badge, and

---

[2] Wilkes was tried separately.

who ordered Raul Briones out of bed and into the living room. While there is no direct evidence that Driscoll identified himself verbally as a police officer, there is evidence that one or more of the perpetrators did so. Driscoll's participation as a party to this raid was sufficient under the standard of *Jackson v. Virginia*, supra, to authorize the jury's verdict that Driscoll is guilty, beyond a reasonable doubt, of impersonating a public officer as alleged in Count 9 of the indictment. *Murray v. State*, 269 Ga. 871, 874 (4) (505 SE2d 746); OCGA § 16-2-20 (3).

3. Driscoll next contends that the trial court erred in denying his motion to strike Amanda Stanton's testimony that she observed Driscoll's vehicle on Harris Circle. He urges Stanton's eyewitness testimony was inadmissible because the State did not comply with OCGA § 17-16-7, which provides, in pertinent part: "the prosecution . . . shall produce for the opposing party any statement of any witness that is in the possession, custody, or control of the [S]tate or prosecution . . . that relates to the subject matter concerning the testimony of the witness."

At trial, the State's attorney represented he had no statement made by Stanton. Rather, Stanton's oral statements to the police were "referenced" in the Lawrenceville Police Department Arrest Report Supplemental, a copy of which he served on trial counsel.

There can be no "possession, custody, or control" of a witness' statement which has neither been recorded nor committed to writing. OCGA § 17-16-1 (1). Accordingly, if, but only if, the eyewitness' statement had been recorded or committed to writing other than in "notes or summaries made by counsel," it would be discoverable. OCGA § 17-16-1 (2) (C).

*Forehand v. State*, 267 Ga. 254, 255 (3) (477 SE2d 560). In the cases sub judice, the State had reference only to an oral statement from Stanton. Consequently, the trial court did not err in admitting Stanton's eyewitness identification testimony over defendant Driscoll's objection that OCGA § 17-16-7 had been violated.

4. Driscoll also contends the trial court erred in admitting into evidence certain "photographs" which were not served on him by the State at least ten days before trial under OCGA § 17-16-4. But he supports this enumeration with argument and citation of authority only as to a single photograph depicting Raul Briones' brother and three friends in the living room of the Harris Circle residence. Accordingly, we address this enumeration only with respect to this photograph. Court of Appeals Rule 27 (c) (2) ("Unsupported claims of error treated as abandoned").

Investigator Billy Sharpton testified the photograph complained of had not been developed before trial under department policy. The State's attorney represented he did not possess the photograph until the pretrial motion hearing one day before trial. Driscoll declined the trial court's offer of a continuance during trial to further examine the photograph.

> If the State fails to comply with OCGA § 17-16-4 (a) (3), the trial court may prohibit the State from introducing the evidence it improperly withheld from the defense. This sanction, however, applies only where there has been a showing of prejudice to the defense and bad faith by the State. OCGA § 17-16-6.

*Tucker v. State*, 222 Ga. App. 517, 518 (3) (474 SE2d 696). The rights of the accused to reasonable pretrial access to evidence are not subject to the vagaries of a police department "policy" not to develop evidentiary photographs until the day before trial. See *Carr v. State*, 267 Ga. 701, 711 (10), n. 5 (482 SE2d 314), overruled in part on other grounds, *Clark v. State*, 271 Ga. 6, 9 (5) (515 SE2d 155); *Bentley v. State*, 210 Ga. App. 862, 863 (2) (a) (438 SE2d 110). Nevertheless, we agree with the trial court that, after the offer of a continuance was declined, no prejudice to the defense was established under these circumstances.

5. Over defendant Driscoll's objection, the trial court permitted the State's attorney to pose leading questions to Raul Briones on direct examination, and this evidentiary ruling is enumerated as error.

The State's attorney sought permission to lead Raul Briones to clarify the individuals he identified as the perpetrators in three photographic lineups ultimately introduced in evidence by the State. Without objection, Raul Briones earlier identified Driscoll as a perpetrator from one such photographic lineup. He also later identified Driscoll at trial. Further, defendants were apprehended at the crime scene, and both made statements, admitted in evidence at trial, acknowledging their presence in Raul Briones' home.

"[I]t [is] purely within the discretion of the court as to whether the State's counsel should be permitted to lead the witness, or to cross-examine his own witness." *Fouraker v. State*, 4 Ga. App. 692, 693 (3) (62 SE 116). Inasmuch as Driscoll's identity and presence at the scene were not disputed, the trial court did not abuse its discretion in permitting the State's attorney to put leading questions to its witness while on direct examination, where the witness demonstrated a limited command of English. See *Fugate v. State*, 263 Ga. 260, 265 (10) (431 SE2d 104) (ignorance one basis upon which trial

court may permit leading questions on direct examination).

6. Driscoll next challenges as impermissible hearsay the testimony of Investigator Sharpton concerning the photographic lineup in which Raul Briones identified him as a perpetrator. He argues that Investigator Sharpton's own testimony was actually the testimony of the out-of-court interpreter employed to explain the photographic lineup procedures to Raul Briones. Driscoll also argues Investigator Sharpton's testimony improperly bolstered Raul Briones' in-court identification of him.

Investigator Sharpton testified he explained the photographic lineup procedures to Raul Briones through an interpreter. He also testified there had been no suggestion or coaching. No out-of-court witness' statement was offered or admitted through Investigator Sharpton's testimony. Consequently, no hearsay question arises under OCGA § 24-3-1. Moreover, it is settled that "[a] law enforcement officer is permitted to testify to a vocal fact of identification witnessed by himself without its being subject to a hearsay objection." (Citations and punctuation omitted.) *Neal v. State*, 211 Ga. App. 829, 830 (1) (b) (440 SE2d 717). That is precisely what occurred in this instance.

7. In his enumerations of error, Driscoll further contends the trial court erred in admitting into evidence the photographic lineup in which he was identified. He argues the lineup is unduly suggestive because the picture of him is small in comparison to the other pictures, and because it depicts him with facial hair.

The six photographs in the array are all white males of similar complexion, age, and hairstyle, photographed against dark backgrounds. Driscoll correctly points out that his photograph is smaller than four of the other pictures. Our review indicates that defendant Driscoll's photograph is identical in size to one other picture and is only slightly smaller than the remaining four. Five pictures in the array depict men with facial hair.

"Convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." (Citations and punctuation omitted.)

*Heard v. State*, 210 Ga. App. 805, 806 (2) (437 SE2d 496). An identification procedure is impermissibly suggestive when it leads the witness to an "all but inevitable identification" of a defendant as the perpetrator, or is the equivalent of the authorities telling the witness, "This is our suspect." *Miller v. State*, 270 Ga. 741, 743 (2) (512 SE2d

272). We concur in the trial court's assessment that the photographic array was not impermissibly suggestive for any of the grounds argued.

8. Driscoll contends the trial court erred in admitting Raul Briones' testimony as to what he (Driscoll), defendant Thompson and Wilkes said or did in the presence of the victims. Driscoll argues this testimony was hearsay and that Raul Briones was incompetent as a witness because he did not speak English.

Raul Briones testified regarding what he heard and saw at the crime scene. "A trial judge's determination that evidence is admissible as part of the res gestae will not be disturbed unless it is clearly erroneous." (Citation omitted.) *Robinson v. State*, 197 Ga. App. 600, 601 (2) (399 SE2d 94). In the cases sub judice, the trial court's ruling that this testimony was admissible under the res gestae exception to the hearsay rule was correct. A witness is not automatically disqualified as incompetent merely because he speaks English poorly. *Schall v. Eisner*, 58 Ga. 191, 192 (1). In the cases sub judice, the trial court properly ruled that Raul Briones' competence as a witness and his credibility as a witness were matters for the jury to weigh. *Steen v. State*, 130 Ga. App. 632, 633 (204 SE2d 344); see also *Hensley v. State*, 228 Ga. 501 (1) (186 SE2d 729).

9. Driscoll next contends the trial court erred in allowing Raul Briones to testify whether the other victims appeared afraid or scared after being gathered in the living room. He argues this testimony improperly called for speculation. We disagree.

Raul Briones testified he was ordered into the living room at gunpoint. His brother and friends were already there. Defendants Thompson and Driscoll plus Wilkes were also in the living room, armed, dressed in dark clothing, interrogating the victims. Raul Briones was afraid, and he believed his brother and friends were also afraid because "[t]hey didn't know what was going on."

> "Where the question under examination, and to be decided by the jury, shall be one of opinion, any witness may swear to his opinion or belief, giving the reasons therefor." OCGA § 24-9-65. Moreover, a lay witness can give opinion testimony as long as he gives sufficient facts to form the basis of his opinion; a person's state of mind or mental condition is properly the subject of opinion testimony and that after narrating the facts and circumstances upon which his conclusion is based, a nonexpert witness may express his opinion as to the state of mind or mental condition of another. *Leonard v. State*, 157 Ga. App. 37, 38 (1) (276 SE2d 94) (1981).

*O'Kelley v. State*, 175 Ga. App. 503, 507 (3) (333 SE2d 838).

Raul Briones certainly could testify that he himself was afraid in these circumstances. He also could relate what he observed about the others similarly situated in his presence. In our view, this was a sufficient factual predicate to authorize the trial court's admission of Raul Briones' opinion testimony as a nonexpert witness. *O'Kelley v. State*, supra.

10. Lastly, Driscoll contends the trial court erred in failing to give his written request to charge nos. 15, 18, 23, 24, 26, 28, 35, 36, 38, and 45 and, further, in failing to charge the jury as to the rights and powers of bounty hunters. Driscoll does not support the enumeration regarding his numbered requests by any argument or citation of authority. His claims of error as to these charges are therefore deemed abandoned in accordance with Court of Appeals Rule 27 (c) (2). As to the alleged error in failing to charge as requested, no evidence was adduced at trial indicating that defendants were bounty hunters.

> If any portion of a requested charge is inapt, incorrect, misleading, confusing, not adequately adjusted or tailored, or not reasonably raised or authorized by the evidence, denial of the charge request is proper. *Hill v. State*, 259 Ga. 557 (3b) (385 SE2d 404); *Jones v. State*, 200 Ga. App. 519, 521 (2c) (408 SE2d 823).

*Harris v. State*, 202 Ga. App. 618, 621 (4) (c) (414 SE2d 919). In the cases sub judice, the trial court properly refused to give the requested bounty hunter charge because it was not adjusted to the evidence.

*Judgments affirmed. Andrews, P. J., and Ruffin, J., concur.*

DECIDED AUGUST 30, 1999 —
RECONSIDERATION DENIED SEPTEMBER 14, 1999 — 

· *Christopher T. Adams*, for appellant (case no. A99A1285).
*Stephen F. Mackie*, for appellant (case no. A99A1297).
*Daniel J. Porter, District Attorney, R. Keith Miles, Assistant District Attorney*, for appellee.