A00A1020. KARIM v. THE STATE.
(535 SE2d 296)

PHIPPS, Judge.

Sultan Rasheed Karim appeals his convictions of five counts of kidnapping and one count each of armed robbery, aggravated assault, and possession of a firearm during the commission of a crime. He argues that the trial court improperly admitted evidence of an independent crime and an impermissibly suggestive photographic lineup. Because we find no error in the admission of this evidence, we affirm.

1. Evidence of the independent crime was admitted to show course of conduct, scheme, plan, and bent of mind. Karim argues that these purposes were overly broad.

Karim was convicted of the crimes in this case based on evidence showing that he and an accomplice, both African-American males,

---

[4] See, e.g., *Cagle v. Davis*, 236 Ga. App. 657, 662 (4) (b) (513 SE2d 16) (1999).

robbed a Hardee's restaurant in Douglas County on November 5, 1994. After entering the restaurant, Karim displayed a gun, instructed the cashier to summon all of the restaurant employees to the front, and demanded money. At Karim's direction, the cashier gathered money from the cash registers and put it in a bag. Afterward, Karim ordered the restaurant employees to proceed toward the back of the restaurant to a freezer. He then made his getaway in a car driven by his accomplice.

A similar transaction witness testified that on November 19, 1994, Karim and another African-American male entered a restaurant in Clayton County, brandished handguns, made all the employees come to the front, had one of the employees put money in a bag, instructed the employees to proceed to a cooler, and then fled the restaurant with the money.

The purposes for which the similar transaction evidence was admitted were not too broad. Both were armed robberies that were perpetrated within a two-week period in nearby counties. In both robberies, Karim's accomplice was another African-American male, and the employees of a restaurant were summoned to the front, ordered to put the money from the restaurant in a bag, and instructed to proceed to the rear of the store toward a cooler or freezer to facilitate the getaway. The two offenses were so similar as to evidence a common plan or scheme and revealed a virtually identical modus operandi.[1] Bent of mind and course of conduct were also shown.[2] The trial court did not abuse its discretion in admitting this evidence.

2. The photographic lineup was displayed to store employees prior to trial.

> We use a two-part test in determining whether evidence of pre-trial identification should be excluded: "The threshold inquiry is whether the identification procedure was impermissibly suggestive. Only if it was need the court consider the second question: whether there was a very substantial likelihood of irreparable misidentification." [Cit.][3]

"An identification procedure is impermissibly suggestive when it leads the witness to an 'all but inevitable identification' of a defendant as the perpetrator, or is the equivalent of the authorities telling the witness, 'This is our suspect.' [Cit.]"[4] In reviewing a trial court's

---

[1] *Wingfield v. State*, 229 Ga. App. 75, 79 (1) (493 SE2d 235) (1997).
[2] See *Maldonado v. State*, 240 Ga. App. 497 (3) (523 SE2d 917) (1999).
[3] *Anderson v. State*, 238 Ga. App. 866, 874 (5) (519 SE2d 463) (1999).
[4] *Thompson v. State*, 240 Ga. App. 26, 31-32 (7) (521 SE2d 876) (1999).

denial of a motion to suppress, we construe the evidence most favorably to upholding the court's findings and judgment, and we, therefore, accept the court's ruling unless clearly erroneous.[5]

Identification procedures have been found or have been assumed to be impermissibly suggestive in cases such as *Foster v. California*,[6] *Ward v. Wainwright*,[7] and *Arnold v. State*.[8] "In *Foster*, the defendant was one of only three men in a lineup; he was five or six inches taller than the other two, and he wore a jacket similar to one the robber had worn."[9] "In *Ward*, defendant alone was shown to the victim who was told that he had refused to participate in the lineup and that he was being held on a charge of breaking and entering another person's premises in the victim's building."[10] In *Arnold*, the defendant's photograph was the only one of someone wearing clothing of the same coloring as that worn by the robber.

In contrast, no impermissible suggestiveness was found in cases such as *Brewer v. State*,[11] *Payne v. State*,[12] *Thompson v. State*,[13] and *Truelove v. State*.[14] The picture tone of Brewer's photograph was demonstrably lighter than that of the other five persons in the six-photograph array, but the persons depicted in the array were of roughly the same age and appearance. Payne was one of only two men in an eight-man display who was over six feet tall, where the victim had estimated that the perpetrator was six feet one or two inches; but no man in the lineup was six feet one or two inches, and five men in addition to Payne were within four inches of the suspect's height. In Thompson's case, two pictures in the six-photograph array, including the one of Thompson, were smaller than the other photographs, but the six photographs were all of men of similar complexion, age, and hairstyle with the same background coloring. Truelove was the only one photographed standing in front of a height chart.

In this case, police were told that the gunman was a light-skinned African-American male. Shortly after the robbery, officers stopped a vehicle thought to be the getaway car. Although the two occupants fled into a wooded area, vehicle licensing registration revealed that Karim was the owner, and his fingerprint was lifted from inside the vehicle. An article of clothing fitting the description of

---

[5] *Anderson v. State*, supra, 238 Ga. App. at 874 (5).
[6] 394 U. S. 440 (89 SC 1127, 22 LE2d 402) (1969).
[7] 450 F2d 409, 412 (5th Cir. 1971).
[8] 198 Ga. App. 449 (1) (402 SE2d 69) (1991); see also *Taylor v. State*, 203 Ga. App. 210, 211 (2) (416 SE2d 554) (1992).
[9] *Payne v. State*, 233 Ga. 294, 300 (2) (210 SE2d 775) (1974).
[10] Id.
[11] 219 Ga. App. 16, 20 (6) (463 SE2d 906) (1995).
[12] Supra, 233 Ga. at 300 (2).
[13] Supra, 240 Ga. App. at 31-32 (7).
[14] 198 Ga. App. 14 (1) (400 SE2d 396) (1990).

that worn by one of the robbers was found in the woods.

Douglas County Sheriff's Investigator Hicks constructed the lineup by placing six photographs of African-American males in a card containing slots for each photograph. Four photos were of inmates of the county jail. One was of a county deputy sheriff. One was of Karim. Hicks displayed the card to the restaurant cashier and two other employees five to six hours after the robbery. The cashier and one of the other employees identified Karim as the gunman. The third employee was unable to make an identification.

Several difficulties arose in reconstructing the lineup at trial. Although the original lineup was admitted in evidence as State's Exhibit 1, the picture of the deputy sheriff was missing from it. Karim's photograph fell from its slot in the lineup card and had to be retaped into State's Exhibit 1. The witnesses who made a pretrial identification had initialed the back of the lineup card, but they had not noted which photograph they had selected, and at trial, they could not recall whom they had identified or provide an in-court identification.

None of this, however, rendered the lineup inadmissible. Although the deputy's photo was lost, another photograph of the deputy was admitted in evidence as State's Exhibit 3, and a photostatic copy of the original lineup was admitted as State's Exhibit 2. A comparison of the photos of the deputy in State's Exhibits 2 and 3 show no material variations. Even though State's Exhibit 1 does not show Karim's photo in the same position as it appeared in the original lineup, State's Exhibit 2 does. While the witnesses could not recall whether they had selected Karim's photo from the lineup, in his police report Hicks documented that Karim was the subject who had been identified. Any uncertainties in lineup reconstruction went " 'to the weight to be afforded the pictorial lineup and not to its admissibility.' [Cit.]"[15]

Karim argues that the photographic lineup was impermissibly suggestive because height charts appear in all photos except his, his photograph differs from all of the other photos because his driver's license was used, and he was the only light-complected African-American male in the lineup. None of these arguments is supported by the record.

An examination of State's Exhibits 1 and 2 shows that although height charts appear in the photos of the inmates, height charts do not appear in either Karim's or the deputy's photo. Moreover, the charts do not appear to be in alignment with the actual heights of the men depicted in the photos. If the height charts suggest anything, it

---

[15] *Daniel v. State*, 185 Ga. App. 228, 230 (2) (363 SE2d 634) (1987).

is that the photos are mug shots. The cashier testified that before she viewed the lineup, Hicks informed her that police had been reviewing their files and had found some individuals with the same modus operandi as that employed in this robbery. Hicks's comment, though suggestive, arguably would have implied to the cashier that the suspect was one of the four inmates. Although the photo of Karim appearing in State's Exhibit 1 does reveal driver's license information, only the photo of Karim's face appears in State's Exhibit 2. In the photographic array, three of the inmates are aptly characterized as dark-complected, one is medium-complected, and Karim and the deputy are light-complected. Testimony given by the cashier indicates that, when she viewed the lineup, she thought the gunman's accomplice was a dark-skinned African-American male. The trial court was thus authorized to find that two photos in the array, including Karim's, depict men whose complexions are similar to the gunman's and that three depict men whose complexions are similar to the accomplice's. The facial hair, hair length, and facial features of all six men are similar.

Under these circumstances, we cannot say that imperfections in the photographic lineup created the kind of suggestiveness that would lead the viewer inexorably to conclude that Karim was the suspect. The trial court's determination that the lineup was not impermissibly suggestive is not clearly erroneous.

*Judgment affirmed. Johnson, C. J., and Smith, P. J., concur.*

DECIDED MAY 31, 2000.

*Michelle R. Gozansky*, for appellant.
*David McDade, District Attorney, James E. Barker, Assistant District Attorney*, for appellee.