A01A0575. BRODES v. THE STATE.
(551 SE2d 757)

Phipps, Judge.

A jury found J. Bodre Brodes guilty of two counts of armed robbery based on the victims' eyewitness identifications of him as the robber. Brodes contends that the trial court erred by (1) refusing to allow his expert witness to testify about the reliability of eyewitness identifications, (2) denying his motions to suppress the results of pretrial photographic and physical lineups, and (3) giving an erroneous pattern jury charge on eyewitness identification. He also claims that the evidence was insufficient to support the verdict. Because we agree that Brodes's expert witness should have been allowed to testify, we reverse.

On October 14, 1996, at around 11:00 p.m., Randy Barton and Greg Wilson were standing near their cars in the parking lot of a fast food restaurant in Hapeville. A man approached Barton, pointed a gun at him, and said, "I'll take all your f—ing money." Barton gave the man his wallet. The man then walked over to Wilson, pointed the gun at him, and demanded his money as well. After Wilson handed the man some money from his pocket, the man walked away. Both victims testified that the parking lot was well lit and that they got a good look at the robber's face, which was not obscured in any way.

Shortly after the incident, Barton described the robber to the police as a black male, aged 18 to 20, 5'8" to 5'10" tall, with a slender build, a "five o'clock shadow," and curly black hair that was short on the bottom and longer on top. Both victims told the police that the robber wore a red Bulls jacket.

Lieutenant Melissa Hughes of the Hapeville Police Department, who investigated the case, testified that she focused on Brodes as a suspect. She compiled a photographic array of six black men, including Brodes. On October 16, she showed the photographs to the two victims separately. Wilson immediately identified Brodes as the robber. At trial, he testified that he was positive about the identification. Barton told the police that he thought he recognized the robber but was not certain, and he requested a physical lineup.

On October 17, Hughes assembled a physical lineup of six black

men, including Brodes. Both victims, viewing the lineup separately, identified Brodes as the robber. Barton testified that he was "absolutely certain" about his identification. Both victims also identified Brodes in court as the robber.

1. Before trial, the State filed a motion in limine to exclude the testimony of Brodes's expert witness, Dr. Stephen Cole, who had been called to testify about problems inherent in eyewitness identifications. At a pretrial hearing, defense counsel summarized the expected subject matter of Cole's testimony. The judge then granted the State's motion, explaining: "I think this is something the jurors can decide. I don't think they need expert testimony to help them with it. And I think that's what Georgia law intends and as it exists now." Later, the judge added, "I don't think that the issue of identification is beyond the ken of the jurors." Defense counsel sought permission to make a proffer of Cole's testimony. The judge granted that request but stated that it would not change his mind.

During the proffer, Cole testified, among other things, that cross-racial identifications are empirically less reliable than intra-racial identifications, particularly when — as was the case here — a white person is identifying a black person. Cole also testified that studies show that victims at gunpoint are less likely to remember their assailant's face and that the level of confidence an eyewitness places in his identification bears little relation to its accuracy. The judge ruled that Cole was an expert but reiterated without elaboration that he would exclude his testimony.

In *Johnson v. State*,[1] our Supreme Court held that

admission of expert testimony regarding eyewitness identification is in the discretion of the trial court. Where eyewitness identification of the defendant is a key element of the State's case and there is no substantial corroboration of that identification by other evidence, trial courts may not exclude expert testimony without carefully weighing whether the evidence would assist the jury in assessing the reliability of eyewitness testimony and whether expert eyewitness testimony is the only effective way to reveal any weakness in an eyewitness identification. [Cit.][2]

Brodes argues that the trial court abused its discretion by failing to

---

[1] 272 Ga. 254 (526 SE2d 549) (2000).

[2] (Footnote omitted.) Id. at 257 (1). *Johnson* was decided after Brodes was convicted but before he filed his notice of appeal. Therefore, under the appellate "pipeline" rule, *Johnson* applies to this case. See *Taylor v. State*, 262 Ga. 584, 586 (3) (422 SE2d 430) (1992); *Freeman v. State*, 269 Ga. 337, 339 (1) (c) (496 SE2d 716) (1998).

consider whether Cole's testimony would have assisted the jury and would have provided Brodes's only means of revealing weaknesses in the victims' eyewitness identifications. We agree.

The State admitted that its case against Brodes hinged on the victims' eyewitness identifications. There was no other evidence tying Brodes to the crime and no evidence corroborating the victims' identifications.[3] Under these circumstances, Cole's testimony should have been admitted.

First, the record shows that the testimony would have aided the jury in evaluating the reliability of the victims' identifications of Brodes. Cole would have testified about several factors affecting the accuracy of eyewitness identification that were otherwise not likely to be fully understood by jurors.[4] Those factors are highly relevant in this case, which involves cross-racial identifications by victims who were at gunpoint and who professed confidence in their identifications.[5] Second, the record shows no other effective means for Brodes to illustrate the potential weaknesses of the victims' identifications. Although defense counsel cross-examined the victims, the testimony of an expert witness was the only way to put before the jury the empirical evidence proffered by Cole.

Moreover, we cannot say that the exclusion of Cole's testimony was harmless error. The only evidence against Brodes was the victims' identifications of him, and Brodes's only defense was mistaken identity. Thus, the reliability of the victims' identifications was the pivotal issue.

2. The trial court denied Brodes's motion to suppress the results of the photographic and physical lineups. Brodes argues that this was error because the other participants in the lineups did not look like him. We disagree.

To determine whether evidence of pretrial identification should be excluded, we first consider whether the identification procedure was impermissibly suggestive.[6] If it was, then we consider whether there was a very substantial likelihood of irreparable misidentification.[7]

(a) The photographic array compiled by Lieutenant Hughes consisted of photographs of six black males, including Brodes. Brodes

---

[3] Compare *Johnson*, supra at 258-259 (2) (victim's identification of defendant as armed robber was corroborated by photographs taken by ATM camera and by independent witness who identified defendant; State also presented evidence of a similar transaction).

[4] See id. at 259-260.

[5] Compare id. at 260 (expert testimony not necessary because an independent witness's identification of defendant was not made under stress and was not "based on generalized racial characteristics but on individual details").

[6] *Karim v. State*, 244 Ga. App. 282, 283 (2) (535 SE2d 296) (2000).

[7] Id.

contends that the men in two of the photographs appear to be much older than he is and a third man has much lighter skin. Assuming the victims could eliminate those three photographs immediately as dissimilar to the victims' description of the robber,[8] the three remaining photographs — including the one of Brodes — depict men who are relatively similar in appearance and who do match the victims' description.

Although Brodes argues that his photograph is slightly larger than the other two, has a different background, and appears to be partially cut off at the top, these discrepancies are not so great as to "lead the viewer inexorably to conclude that [Brodes] was the suspect."[9] Brodes also asserts that these men had mustaches, whereas he did not. Our review of the original photographs shows that while the other two men had sparse, though discernible, mustaches, it appears that Brodes also had facial hair above his upper lip. Moreover, Barton described the robber as having a "five o'clock shadow." In any event, our Supreme Court has held that discrepancies in amount of facial hair do not render a pretrial identification unfairly suggestive.[10]

We conclude that the photographic array was not so suggestive as to require exclusion.

(b) Brodes contends that the physical lineup was unfair because he was the only person to appear both there and in the photographic array and because the other participants in the physical lineup were "not of similar age or description."

In *Denegal v. State*,[11] we held that the fact that the defendant was the only person to appear in both a photographic display and a physical lineup did not "render the pre-trial identification procedures impermissibly suggestive."[12] Moreover, we have reviewed photographs of the participants in the physical lineup and find no conspicuous dissimilarities between Brodes and the other men. "[I]n the absence of evidence of record demanding a finding contrary to the judge's determination, we will not reverse the ruling denying the

---

[8] Although the victims told the police that the robber was black, the record does not indicate that they provided any specific description of the robber's skin tone.

[9] *Karim*, supra at 286; see also *Thompson v. State*, 240 Ga. App. 26, 31-32 (7) (521 SE2d 876) (1999) (exclusion of array not required despite variation among size of photographs and presence of facial hair on subjects); *Brewer v. State*, 219 Ga. App. 16, 20 (6) (463 SE2d 906) (1995) (contention that the shading and tone of defendant's photograph made photographic identification procedure unduly suggestive was without merit); *Cheeves v. State*, 157 Ga. App. 566 (1) (278 SE2d 148) (1981) (array not impermissibly suggestive where backgrounds and sizes of photographs differed, and some subjects wore hats).

[10] *Miller v. State*, 270 Ga. 741, 743 (2) (512 SE2d 272) (1999).

[11] 193 Ga. App. 238 (387 SE2d 434) (1989).

[12] Id. at 239 (1).

suppression."[13]

3. Brodes objects to the trial court's use of a pattern jury instruction on eyewitness identification that includes "the level of certainty shown by the witness about his identification" as a factor the jury can consider in assessing the reliability of the identification. However, Brodes requested this charge. "The act of requesting an instruction in the trial court constitutes a specific waiver of the right to enumerate it as error on appeal. Because [Brodes] induced the giving of the charge below, he is precluded from attacking it now. Thus, . . . we are unable to reconsider the validity of the pattern charge as currently formulated."[14]

4. Brodes contends that the evidence was insufficient to support his convictions because there was a substantial risk that the victims incorrectly identified him as the armed robber. However, in reviewing a challenge to the sufficiency of the evidence, we do not assess the credibility of witnesses.[15] Our task is limited to determining whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[16] Here, the testimony of the victims identifying Brodes as the robber was sufficient to authorize his convictions, and evaluating the accuracy of those identifications was within the exclusive province of the jury.[17]

*Judgment reversed. Smith, P. J., and Barnes, J., concur.*

DECIDED JULY 2, 2001 — ▮▮▮▮▮▮▮

*Henry A. Hibbert*, for appellant.
*Paul L. Howard, Jr., District Attorney, Alvera A. Wheeler, Bradley R. Malkin, Assistant District Attorneys*, for appellee.

---

[13] (Citation and punctuation omitted.) *Wright v. State*, 211 Ga. App. 474, 477 (3) (440 SE2d 27) (1993).

[14] (Citations omitted.) *DeLoach v. State*, 272 Ga. 890, 892 (2) (536 SE2d 153) (2000).

[15] *Millwood v. State*, 237 Ga. App. 748 (1) (516 SE2d 799) (1999).

[16] *Free v. State*, 245 Ga. App. 886 (1) (539 SE2d 213) (2000).

[17] See *Willis v. State*, 241 Ga. App. 813, 814-815 (1) (527 SE2d 895) (2000); *Ford v. State*, 239 Ga. App. 257, 258 (1) (520 SE2d 923) (1999).