A10A0304. FRAZIER v. THE STATE.
(699 SE2d 747)

BLACKBURN, Senior Appellate Judge.

Following a jury trial, Tomone Frazier was found guilty of armed robbery. He now appeals the denial of his motion for new trial, challenging the sufficiency of the evidence and contending that the trial court erred (i) in excluding the testimony of his expert witness regarding eyewitness testimony and (ii) in denying his motion to suppress identification testimony. Discerning no error, we affirm.

> On appeal from a criminal conviction, the evidence must be viewed in the light most favorable to support the verdict, and the defendant no longer enjoys a presumption of innocence; moreover, an appellate court determines evidence sufficiency and does not weigh the evidence or determine witness credibility.

---

[26] (Punctuation omitted.) *Evans v. State*, 300 Ga. App. 180, 181 (684 SE2d 311) (2009).

(Punctuation omitted.) *Burden v. State*.[1] Likewise, when reviewing the denial of a motion to suppress, we construe the evidence presented both at the suppression hearing and at trial in a light favorable to upholding the trial court's findings and judgment. *Thomas v. State*.[2]

So viewed, the record reveals that at approximately 3:30 a.m. on September 8, 2007, the victim was walking to work from her home when she was approached by two men. She had spotted the men come out from behind a nearby bush and slowly cross the street before they approached her. One of the men placed a shotgun to her face and said, "Give me all you got." She said that she looked him "right in his face" during the incident.

The man with the gun shoved the victim and snatched her purse. She told the robber there was nothing in the purse; he unzipped it, looked inside, threw the purse at the victim, and ran. The victim continued walking while she called 911 to report the crime, describing the men and their travel direction to police. She also told police her location; police arrived in minutes, whereupon she was transported to a nearby location where police had two suspects in custody for her identification. The suspects were in separate police cruisers. The victim first identified Frazier, who was 16 years old at that time, as the assailant with the shotgun. The victim also pointed out to police that Frazier had discarded his black t-shirt on the ground nearby. She identified Frazier as her assailant at trial.

1. We first address Frazier's assertion regarding the insufficiency of the evidence. "We do not determine the credibility of eyewitness identification testimony. Rather 'the determination of a witness' credibility, including the accuracy of eyewitness identification, is within the exclusive province of the jury.' " *Jones v. State*.[3] OCGA § 24-4-8 provides that "[t]he testimony of a single witness is generally sufficient to establish a fact." Here the victim's testimony alone is sufficient to authorize the jury's verdict of guilty beyond a reasonable doubt. *Smith v. State*.[4]

2. Frazier next contends that the trial court erred in excluding the testimony of his expert witness, Dr. Jeffrey Neuschatz, regarding the reliability of eyewitness testimony.

After Frazier provided the State notice of his intent to present the testimony of his expert regarding the unreliability of eyewitness testimony, the State filed a motion to exclude the expert's testimony.

[1] *Burden v. State*, 290 Ga. App. 734 (660 SE2d 481) (2008).
[2] *Thomas v. State*, 269 Ga. App. 116 (603 SE2d 689) (2004).
[3] *Jones v. State*, 214 Ga. App. 788 (449 SE2d 330) (1994).
[4] *Smith v. State*, 246 Ga. App. 191, 192 (1) (539 SE2d 881) (2000).

At the subsequent hearing on the motion, Frazier made a proffer of Dr. Neuschatz's qualifications and testimony. The proffer indicated that the expert would testify as to the influences that affect eyewitness memory, including exposure time, stress, change of appearance, and the presence of a weapon. The expert opined that it would be "extremely difficult for jurors and lay people, unfamiliar with the research on eyewitness identification and confession evidence, to appreciate the subtle but important factors that can affect eyewitness identification accuracy. . . ." The trial court granted the State's motion, concluding that "the facts of the case do not warrant expert testimony regarding identification, and that a properly instructed jury will be able to weight the evidence accordingly."

The applicable standard is clear:

> [A]dmission of expert testimony regarding eyewitness identification is in the discretion of the trial court. Where eyewitness identification of the defendant is a key element of the State's case and there is no substantial corroboration of that identification by other evidence, trial courts may not exclude expert testimony without carefully weighing whether the evidence would assist the jury in assessing the reliability of eyewitness testimony and whether expert eyewitness testimony is the only effective way to reveal any weakness in an eyewitness identification. However, the admission or exclusion of this evidence lies within the sound discretion of the trial court, whose decision will not be disturbed on appeal absent a clear abuse of discretion.

(Citation, punctuation and footnote omitted.) *Johnson v. State*.[5] Because some evidence in *Johnson* corroborated the victim's identification of the defendant, the Supreme Court affirmed the trial court's discretionary decision to exclude the expert testimony.

Citing *Brodes v. State*,[6] where we reversed two armed robbery convictions because similar expert testimony was excluded, Frazier argues (and the dissent below opines) that as in *Brodes*, no evidence here corroborated the victim's identification of the defendant and that therefore the trial court abused its discretion in excluding Frazier's expert testimony. We disagree. The record reflects substantial evidence corroborating the victim's identification of Frazier as the gunman; therefore, the trial court did not abuse its discretion in excluding the expert testimony on eyewitness identification.

---

[5] *Johnson v. State*, 272 Ga. 254, 257 (1) (526 SE2d 549) (2000).
[6] *Brodes v. State*, 250 Ga. App. 323, 325 (1) (551 SE2d 757) (2001).

The victim here called police immediately after the armed robbery, identifying to police the male gender of her attackers, their minority race, their approximate ages (16 to 18 years old), their approximate relative heights, their shirts (the gunman wore a black long-sleeve t-shirt with something in the middle of the shirt and the lookout wore a similarly marked black short-sleeve t-shirt), the hairstyle of the gunman (short), the hairstyle of the lookout ("twist-ies"), the pants worn by the men (the lookout wore jean shorts and the gunman wore jean pants), and the long-barreled gun used by the gunman. She further gave the location where she was robbed and the direction in which the attackers were traveling on foot when they left her.

Within two minutes of receiving this dispatch, an officer in a patrol car nearby came to a street some three to four blocks away from the crime scene in the described escape direction of the attackers (only two minutes walking time), where at this early hour of the morning there were no other individuals anywhere in the area other than Frazier and a second man, which men fit the description given by the victim. Frazier himself was of the approximate height described by the victim, was male, was of the described minority race, had short hair, was wearing jean pants, was of the approximate age, was standing near a discarded long-sleeve black t-shirt (with something in the middle of the shirt), and was near some bushes where an officer found the described gun. This evidence amply corroborated the victim's subsequent identification of Frazier as the gunman, which identification took place only minutes later when she was immediately brought by other police to Frazier's location. She similarly identified the other man found by police there, who fit her description of the "lookout."

Substantial evidence corroborated the victim's identification, which supported the trial court's exercise of its discretion to exclude the expert's testimony. See *Howard v. State*;[7] *Allen v. State*.[8]

3. Frazier also contends that the trial court erred in denying his motion to suppress the showup evidence used to identify him the night of the robbery. He maintains that the showup was impermissibly suggestive and unreliable.

Here, in its order denying the motion, the trial court, in considering the totality of the circumstances in evaluating the likelihood of misidentification, found that

the victim had sufficient opportunity to view the suspects. Her attention was directed at the suspects before, during,

YALE LAW LIBRARY

---

[7] *Howard v. State*, 286 Ga. 222, 228 (4) (686 SE2d 764) (2009).
[8] *Allen v. State*, 268 Ga. App. 519, 527-528 (2) (602 SE2d 250) (2004).

and after the crime. Immediately before the incident occurred, the victim noticed the defendant and his co-defendant walking near her location. At the time of the incident, the defendant stood in front of the victim as he displayed a weapon. The victim expressed unwavering certainty in her identification of the defendant at the time of the showup and on the witness stand. The victim's description led to the quick apprehension of the suspects. There was a short interval of time, ten (10) minutes, between the crime and the showup. The witness's prior description of the defendant was consistent with the defendant's appearance at the time of the apprehension and the showup. Finally, the officers conducted the showup with sufficient lighting and gave the victim proper, non-suggestive identification instructions.

As noted earlier, when reviewing a trial court's denial of a motion to suppress, we construe the evidence most favorably to upholding the court's findings and judgment, and accept the court's ruling unless clearly erroneous. *Anderson v. State*.[9]

A showup identification has been held to be inherently suggestive, but not necessarily inadmissible. *Miller v. State*.[10] A trial court uses a two-part test in determining whether evidence of pre-trial identification should be excluded. *Young v. State*.[11] First, the court determines whether the identification procedure was impermissibly suggestive, and upon a finding in the affirmative, the court considers whether there was a very substantial likelihood of irreparable misidentification. Id. "An identification procedure is impermissibly suggestive when it leads the witness to an 'all but inevitable identification' of a defendant as the perpetrator, or is the equivalent of the authorities telling the witness, 'This is our suspect.' " *Thompson v. State*.[12]

Here, even assuming without deciding that the circumstances surrounding Frazier's identification rendered the showup impermissibly suggestive, the evidence is inadmissible only if under the totality of the circumstances, there was a substantial likelihood of irreparable misidentification. *Miller*, supra, 266 Ga. App. at 383 (1). We listed in *Miller*, id. at 382, factors to be considered by the trial court in evaluating the likelihood of misidentification, including "the

---

[9] *Anderson v. State*, 238 Ga. App. 866, 874 (5) (519 SE2d 463) (1999).

[10] *Miller v. State*, 266 Ga. App. 378, 382 (1) (597 SE2d 475) (2004).

[11] *Young v. State*, 272 Ga. App. 304, 310 (4) (a) (612 SE2d 118) (2005).

[12] *Thompson v. State*, 240 Ga. App. 26, 31-32 (7) (521 SE2d 876) (1999).

opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, and the level of certainty demonstrated by the witness at the confrontation." (Punctuation omitted.) Id.

Here, as found by the trial court, the victim identified Frazier within minutes of the offense in close proximity to where the robbery occurred. The victim was able to observe Frazier and his co-defendant for several minutes before the robbery, and also as Frazier held the gun at her head. Further, the victim's description of Frazier was substantially correct, she demonstrated a high degree of certainty during the identification, and she expressed no hesitancy in identifying Frazier as the person who had robbed her minutes earlier. Given this evidence, the trial court did not clearly err in finding that no substantial likelihood of misidentification occurred, and thus the trial court did not err in denying Frazier's motion to suppress.

*Judgment affirmed. Andrews, P. J., Smith, P. J., Adams and Bernes, JJ., concur. Mikell, J., concurs and concurs specially. Barnes, P. J., concurs in part and dissents in part.*

MIKELL, Judge, concurring and concurring specially.

I concur with all that is said in the majority opinion. I write separately only to emphasize that *Johnson v. State*,[13] authored by current Supreme Court of Georgia Chief Justice Hunstein, held unequivocally that the admission of expert testimony as to the accuracy of eyewitness evidence is within the sound discretion of the trial court, whose discretion will not be disturbed on appeal absent clear abuse.[14] I also wish to point out that such expert testimony is problematic and generally unnecessary.

*Johnson* does not stand for the proposition that, whenever there is no evidence corroborating the eyewitness identification, the trial court must admit the expert testimony to assist the jury. Rather, *Johnson* states that when no substantial corroborating evidence existed, the trial judge should "carefully weigh" whether the expert testimony would assist the jury.[15] *Johnson* implies that the trial judge retains the discretion to exclude the expert testimony provided that the judge has carefully considered the matter. In the case at bar, the

---

[13] 272 Ga. 254 (526 SE2d 549) (2000).

[14] Id. at 257 (1). Accord *Howard v. State*, 286 Ga. 222, 228 (4) (686 SE2d 764) (2009); *Davis v. State*, 286 Ga. 74, 77-78 (3) (686 SE2d 249) (2009); *Manley v. State*, 284 Ga. 840, 845-846 (3) (672 SE2d 654) (2009); *Jones v. State*, 273 Ga. 213, 216-217 (3) (539 SE2d 143) (2000); *Johnson v. State*, 271 Ga. 375, 382 (12) (519 SE2d 221) (1999).

[15] *Johnson*, supra, 272 Ga. at 257.

trial court's order reflects that the court did consider the matter and "carefully weigh" whether the expert testimony would assist the jury. Therefore, as decreed in the unanimous decision in *Johnson*,[16] the matter was squarely within the discretion of the learned and experienced trial judge.

Although purporting to rely on *Johnson*, the dissent nonetheless holds that the trial court abused its discretion not to admit the expert testimony. An appellate court should not feign allegiance to the rule that a matter is within the trial court's sound discretion and then find an abuse of discretion whenever it disagrees with the trial judge's decision. Such unbridled appellate "review" is nothing but a de novo consideration, from a cold record, of the evidence seen and heard by the trial court. It is not permitted by our Supreme Court. "*Johnson* . . . stresses that these decisions are within the sound discretion of the trial court."[17]

In the case at bar, there is some evidence corroborating the eyewitness identification. The two men stopped by the police shortly after the crime was committed happened to be the only two men on the streets in that neighborhood around 3:50 a.m. The evidently clear-headed witness recalled that the man with the shotgun seemed to be talking in an artificially low voice, that is to say, in the voice that might be affected by a young man trying to seem older. Such subjective evidence is some corroboration of the eyewitness's claim that Frazier, who was 16 years old at the time of the crime, was the man with the shotgun.

Irregularities in eyewitness perception and memory generally are not beyond the ken of the average juror. Juries are aware that a victim's attention may be distracted from a perpetrator's face by the fact that the perpetrator is brandishing a menacing handgun, or in the case at bar, a menacing shotgun. Jurors also understand the difference between an identification made in a photographic lineup two weeks after the crime and one made by the eyewitness shortly after the police locate the perpetrator, based on the witness's description, near the crime scene. Although these are not matters to which jurors turn much attention in their daily lives, they are directed in their evaluation of the evidence at trial by opening statements and closing arguments as well as the pattern jury charge on identification.[18] If we allow experts to tell juries that eyewitness

---

[16] Id.

[17] *Manley*, supra at 846 (3), n. 5.

[18] The pattern charge is an accurate statement of the law after the Supreme Court removed the misleading statement that juries could consider the level of certainty shown by the witness in his or her identification. See *Brodes v. State*, 279 Ga. 435, 442 (614 SE2d 766) (2005) ("*Brodes III*"); Suggested Pattern Jury Instructions, Vol. II: Criminal Cases, § 1.35.10

testimony is "inherently," i.e., always, unreliable,[19] then juries will start insisting on videotape and DNA evidence in prosecutions of life-threatening crimes, when such evidence will often be unavailable. For these reasons, ruling that a jury cannot evaluate eyewitness identification without the aid of an expert witness is problematic.

Finally, such expert testimony is generally unnecessary. A careful review of *Brodes III* demonstrates this point. As recounted in that opinion, the expert witness testified that (1) the presence of a gun during the commission of a robbery creates a highly stressful situation, decreasing the witness's ability to "perceive and remember," and (2) the relationship between the witness's level of confidence in his or her identification and the accuracy thereof is not "good."[20] Nevertheless, the juries in both the first trial of Bodre Brodes,[21] and his retrial[22] reached the same verdict with and without the aid of an expert witness.

BARNES, Presiding Judge, concurring in part and dissenting in part.

I concur fully with Divisions 1 and 3 of the majority opinion. However, because I believe that the trial court abused its discretion in excluding expert testimony regarding eyewitness identification, I must respectfully dissent to Division 2.

Our Supreme Court has held that in circumstances

> [w]here eyewitness identification of the defendant is a key element of the State's case and there is no *substantial* corroboration of that identification by other evidence, trial courts may not exclude expert testimony without carefully weighing whether the evidence would assist the jury in assessing the reliability of eyewitness testimony and whether expert eyewitness testimony is the only effective way to reveal any weakness in an eyewitness identification.

(2007). There can be further changes to the suggested charge if experience and science warrant them. The absence of any correlation between the accuracy of the eyewitness's identification and the level of certainty may be the only counterintuitive matter about which these expert witnesses testify.

[19] See *Jones*, supra at 218 (3) (a) (holding that "although expert testimony may be admissible under *Johnson* to demonstrate the general lack of a correlation between confidence and accuracy," the studies upon which the defendant relied "do not render every eyewitness's testimony regarding his or her confidence inherently unreliable and inadmissible") (footnote omitted).

[20] *Brodes III*, supra at 438.

[21] *Brodes v. State*, 250 Ga. App. 323 (551 SE2d 757) (2001) ("*Brodes I*"), cert. denied, *State v. Brodes*, 2002 Ga. LEXIS 152.

[22] *Brodes v. State*, 268 Ga. App. 895 (602 SE2d 895) (2004) ("*Brodes II*"), rev'd, *Brodes III*, supra.

(Citations, punctuation and footnote omitted.) *Johnson v. State*, 272 Ga. 254, 257 (1) (526 SE2d 549) (2000). I do not agree with the majority's conclusion that there was substantial corroboration of the eyewitness identification in this case, and further, weighing the factors set forth by the Supreme Court of Georgia in *Johnson*, the trial court abused its discretion in excluding the defendant's expert witness.

Much of the "corroborating" evidence cited by the majority was related to the identification by the victim/eyewitness, such as Frazier's clothing, height, hairstyle and the like. This self-corroborating evidence is not what I believe can be characterized as *substantial* corroboration of the eyewitness identification, especially given that key identification characteristics testified to by the witness were rebutted, including Frazier's height. The witness described her robbers as between 5′3″ and 5′7″, and Frazier is six feet tall. The only other corroborating evidence was an air rifle found near the scene of the crime that police never linked to Frazier, and Frazier's proximity to the crime. While certainly this is *some* corroborating evidence, it is far from substantial, and thus the trial court had to weigh whether the testimony of the defendant's expert would assist the jury in determining the eyewitness's reliability and whether it was the only *effective* way to reveal any weaknesses in the witness's identification, as mandated by *Johnson*.

Frazier's only defense was that he was mistakenly identified. Jurors give great significance and credibility to eyewitness testimony. There are probably few images that resonate with a jury as much as that of the witness pointing her finger at the defendant and loudly proclaiming, "He did it!" It was critical to his defense that Frazier be given an effective means to exploit the weaknesses in the victim's identification. Further, if evidence is helpful to the jury, it should be admitted. It would never be error to admit expert testimony explaining the inherent unreliability of eyewitness testimony, which, while counterintuitive and contrary to common wisdom, is scientific fact. *Johnson*, supra at 256. The admission of such expert testimony does not undermine the jury's ability to determine the truth; it is simply one more piece of evidence it will use in its process of deliberation.

As our Supreme Court recognized in *Brodes v. State*, 279 Ga. 435 (614 SE2d 766) (2005), "[w]hen identification is an essential issue at trial, appropriate guidelines focusing the jury's attention on how to analyze and consider the factual issues with regard to the reliability of a witness's identification of a defendant as the perpetrator are critical." Id. at 442. The *Johnson* court anticipated circumstances in which a trial court's exclusion of such expert evidence could constitute an abuse of discretion, and set forth the evidence in considerable

detail — in addition to the eyewitness victim's testimony, the State had stills from an ATM video of the crime, another eyewitness, and a similar transaction in which the victim identified a particular type of handgun which was later found in the defendant's car — to explain why there was no abuse of discretion there.

While I acknowledge the trial court's wide latitude to determine whether to admit or exclude evidence, an abuse of discretion standard, while deferential, is not toothless and does not require the appellate courts to rubber-stamp these decisions. There is some point at which the decision to exclude the only effective means to challenge the State's only evidence constitutes an abuse of discretion. Because that was the situation here, the trial court abused its discretion in failing to allow the witness to testify. Accordingly, I must respectfully dissent in part.

DECIDED JULY 16, 2010 — 

*Mark J. Nathan*, for appellant.
*Larry Chisolm, District Attorney, Julayaun M. Waters, Assistant District Attorney*, for appellee.