A10A1916. LAW v. THE STATE.
(706 SE2d 604)

DOYLE, Judge.

Following a jury trial, George Law was found guilty of armed robbery[1] and two counts of possession of a firearm during the commission of a felony.[2] He appeals, arguing that the trial court erred by (1) denying his motion to suppress identification testimony and (2) denying his motion to suppress his custodial statement. He also challenges the sufficiency of the evidence. We affirm, for reasons that follow.

> On appeal from a criminal conviction, the evidence must be viewed in the light most favorable to support the verdict, and the defendant no longer enjoys a presumption of innocence; moreover, an appellate court determines evidence sufficiency and does not weigh the evidence or determine witness credibility. Likewise, when reviewing the denial of a motion to suppress, we construe the evidence presented both at the suppression hearing and at trial in a light favorable to upholding the trial court's findings and judgment.[3]

So viewed, the record shows that on February 7, 2008, at approximately 2:30 a.m., brothers Patrick Horton and Immanuel Small left a nightclub and approached their car, which was in the parking lot across the street from the club. As Horton and Small entered their vehicle, an automobile pulled into the lot and parked

---

*Notaries*, 254 Ga. App. at 765 (2) (a).

[1] OCGA § 16-8-41 (a).

[2] OCGA § 16-11-106 (b) (1).

[3] (Citation and punctuation omitted.) *Frazier v. State*, 305 Ga. App. 274, 274-275 (699 SE2d 747) (2010).

nearby. Three men exited the car and approached Horton's vehicle. One of the men, who was armed with a shotgun, ran from the driver's side to the passenger's side of the car repeatedly, pointing the gun at both Horton and Small. The gunman tried to break the driver's side window with the butt of the shotgun and demanded that Horton roll down the window. Horton opened his door, and one of the men told him to "give it up." As Horton unsuccessfully attempted to extricate his wallet from his pants pocket, one of the men punched him in the face with his fist. Small was also punched in the face by one of the men. Horton then exited the car, took off his pants, and gave them to one of the assailants. Small gave the men his wallet, as well as loose change and paper money from his pocket. The three men then returned to their car and left the scene.

A witness from the nightclub called 911 at 2:27 a.m., while the robbery was occurring, and the police arrived shortly thereafter. The victims described their assailants, and police issued a be-on-the-lookout ("BOLO") broadcast for a light brown or silver Lexus occupied by four black males, last seen heading northbound on Martin Luther King Boulevard. Two of the assailants were described as black males, "one being approximately [5] foot [11], [6] feet in height, with shoulder[-]length dre[a]ds, late teens, early twenties. The other one is about [5] feet [10], medium dre[a]ds."

Very shortly thereafter, police spotted a "silver tannish Lexus," but lost track of it when it sped off toward the Frazier Homes housing project. The police proceeded to Frazier Homes, where they located the parked, unoccupied Lexus. An officer saw Law "crouched down," setting a shotgun next to the side of a building. The officer detained him and took possession of the shotgun. Another officer detained Law's co-defendant, Kenneth Jerome Bellamy, in the same complex. According to police records, Law and Bellamy were detained at 2:43 a.m., approximately 16 minutes after the eyewitness called 911.

The police transported Small and Horton to Frazier Homes and asked them whether they could identify Law and Bellamy, who were standing together, handcuffed. Horton and Small immediately identified both men as two of them who robbed them. Horton identified Bellamy as the man who punched him and took his pants. Small identified Law as the man who demanded his money and hit him in the face. The victims' identification occurred within approximately 30 minutes of the robbery. The police questioned Law at the police station thereafter, and although he denied participating in the robbery, he admitted that he was at the scene at the time of the robbery. According to Law, he tried to stop the robbery, but was unsuccessful.

At trial, Small identified Law as his attacker, and Horton

identified Bellamy. Small also testified that the shotgun, which police recovered from Frazier Homes with Law, "look[ed] like the gun" used to rob him. The jury found Law guilty of armed robbery of Small and two counts of possession of a firearm during the commission of a felony.[4] This appeal followed.

1. Law argues that the trial court erred by failing to suppress the identification evidence at trial, claiming that the showup was impermissibly suggestive and gave rise to a substantial likelihood of misidentification. Specifically, Law contends that the fact that Law and Bellamy were shown as a pair to the victims at the same time was particularly suggestive.

As explained in *Brooks v. State*,[5]

> [t]estimony concerning a pre-trial identification of a defendant should be suppressed if the identification procedure was impermissibly suggestive and, under the totality of the circumstances, the suggestiveness gave rise to a substantial likelihood of misidentification. The taint which renders an identification procedure impermissibly suggestive must come from the method used in the identification procedure. An identification procedure is impermissibly suggestive when it leads the witness to an all but inevitable identification of the defendant as the perpetrator, or is the equivalent of the authorities telling the witness, "this is our suspect."[6]
>
> A showup identification has been held to be inherently suggestive, but not necessarily inadmissible. A trial court uses a two-part test in determining whether evidence of pre-trial identification should be excluded. First, the court determines whether the identification procedure was impermissibly suggestive, and upon a finding in the affirmative, the court considers whether there was a very substantial likelihood of irreparable misidentification.[7]

In the instant case, pretermitting whether the circumstances surrounding the showup rendered it impermissibly suggestive, the trial court did not err in concluding that, given the totality of the circumstances, there was no substantial likelihood of misidentifica-

---

[4] Law was acquitted of the armed robbery charge against Horton.

[5] 285 Ga. 246 (674 SE2d 871) (2009).

[6] (Punctuation and footnote omitted.) Id. at 248-249 (3).

[7] (Citations omitted.) *Frazier*, 305 Ga. App. at 278 (3).

tion.[8] Small identified Law within 30 minutes of the offense. Small "got a good look" at all of the assailants, and he "was [100] percent sure" and "knew for a fact that" Law was the man who demanded money and punched him in the face, noting that "it was fresh in [his] head."

"Given the totality of these circumstances, the trial court was authorized to find that no substantial likelihood of irreparable misidentification existed. Accordingly, it properly denied [Law's] motion to suppress."[9]

2. Law also argues that the trial court erred by failing to suppress his statements to the police because he invoked his right to remain silent. We find no basis for reversal.

The police transported Law to the police station, where Detective Sean Aaron Carr read him his *Miranda*[10] rights. Carr asked him if, "having these rights in mind," Law was willing to speak to police, and Law answered, "yes." Detective Carr then completed the waiver of rights form, which lists a suspect's *Miranda* rights, followed by two questions: (1) "Do you understand each of these rights I have explained to you?"; and (2) "Having these rights in mind, are you willing to talk to us now?" After each question, there were two boxes, one labeled "yes," and the other labeled, "no," followed by a space labeled, "[i]nitials." Carr placed a check mark next to "yes" for both questions and then asked Law to place his initials next to those responses. Law placed his initials in the initials space after the question asking if he understood his *Miranda* rights, but following the question asking if he was willing to speak to police, Law placed his initials in the space labeled "no" instead of the initials space. Carr asked if Law meant that he was not willing to speak to the police, and Law "went back and said yes, he was willing to speak to [the detective,] and he initialed next to yes." Although most of Law's substantive statement to Carr was recorded, the conversation between the two men regarding the waiver was not recorded. According to Carr, although he thought he turned on the recording device when he began advising Law of his *Miranda* rights, he later realized that the device was not recording and turned it on during his questioning of Law.

Law argues that his statement should have been suppressed because based on the waiver form, "it appears [Law] invoked his right, and the [d]etective then initiated conversation with [Law] again." Law contends that because the *Miranda* warning was not

---

[8] See id. at 278-279 (3).

[9] *Freeman v. State*, 306 Ga. App. 783, 785 (2) (703 SE2d 368) (2010). See also *Frazier*, 305 Ga. App. at 279 (3); *Crawford v. State*, 297 Ga. App. 187, 191 (2) (676 SE2d 843) (2009).

[10] *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

recorded, "it is impossible to know what transpired with the *Miranda* waiver." We find no basis for reversal.

"Of course, an accused may end a custodial interrogation at any time by invoking his constitutional right to remain silent. To do so, a defendant must unambiguously and unequivocally express his desire to invoke that right. And any invocation of the right must be scrupulously honored."[11]

> There is good reason to require an accused who wants to invoke his or her right to remain silent to do so unambiguously. A requirement of an unambiguous invocation of *Miranda* rights results in an objective inquiry that avoids difficulties of proof and provides guidance to officers on how to proceed in the face of ambiguity. If an ambiguous act, omission, or statement could require police to end the interrogation, police would be required to make difficult decisions about an accused's unclear intent and face the consequence of suppression if they guess wrong. Suppression of a voluntary confession in these circumstances would place a significant burden on society's interest in prosecuting criminal activity. Treating an ambiguous or equivocal act, omission, or statement as an invocation of *Miranda* rights might add marginally to *Miranda's* goal of dispelling the compulsion inherent in custodial interrogation. But as *Miranda* holds, full comprehension of the rights to remain silent and request an attorney are sufficient to dispel whatever coercion is inherent in the interrogation process.[12]

Law did not testify at the suppression hearing, and thus, the only testimony in the record on this issue is that of Detective Carr. Based on Carr's testimony and our review of the record, we conclude that Law's invocation of his right to remain silent, if any, was equivocal because it conflicted with his immediately preceding verbal indication that he was willing to speak with Carr. Thus, Carr had no obligation to stop questioning him, and the officer's attempt to clarify whether Law wished to speak with him was not improper.[13] "Under the totality of the circumstances test, the trial court did not err in finding [Law's] statements admissible."[14]

---

[11] (Punctuation omitted.) *Barnes v. State*, 287 Ga. 423, 425 (2) (696 SE2d 629) (2010).

[12] (Citations and punctuation omitted.) *Berghuis v. Thompkins*, __ U. S. __ (III) (A) (130 SC 2250, 176 LE2d 1098) (2010).

[13] See *Perez v. State*, 283 Ga. 196, 200 (657 SE2d 846) (2008); *Turner v. State*, 287 Ga. 793, 795 (3) (700 SE2d 386) (2010).

[14] *Turner*, 287 Ga. App. at 795 (3).

3. Finally, Law challenges the sufficiency of the evidence. This enumeration is without merit.

"[T]he testimony of a single witness is generally sufficient to establish a fact."[15] "Moreover, we do not determine the credibility of eyewitness identification testimony. Rather the determination of a witness' credibility, including the accuracy of eyewitness identification, is within the exclusive province of the jury."[16] Thus, even though Law was found near a Lexus similar to that involved in the robbery, with a shotgun similar to that used in the attack, and Law admitted being present at the scene of the robbery, Small's testimony alone is sufficient to authorize the jury's verdict of guilty beyond a reasonable doubt.[17]

*Judgment affirmed. Ellington, C. J., and Andrews, J., concur.*

DECIDED FEBRUARY 24, 2011.

*Phillips & Roberts, Amanda R. Roberts*, for appellant.
*Larry Chisolm, District Attorney, Ann M. Elmore, Assistant District Attorney*, for appellee.

---

[15] OCGA § 24-4-8.

[16] (Punctuation omitted.) *Freeman*, 306 Ga. App. at 784 (1).

[17] See id.; *Frazier*, 305 Ga. App. at 275 (1).