## A95A1257. PARTRIDGE v. THE STATE.
(462 SE2d 415)

POPE, Presiding Judge.

Defendant was convicted of armed robbery. There were two eyewitness/victims with ample opportunity to observe the robber at the scene of the crime, and both positively identified defendant as the robber at trial. One of the victims had been able to identify defendant as the robber in a pre-trial photo array, but the other had not.

In his sole enumeration of error, defendant contends the in-court identifications were tainted by the suggestiveness of his position at the defense table and the fact that he was the only black participant in the trial. The Georgia Supreme Court has already addressed and rejected this contention, however. *Ralston v. State*, 251 Ga. 682 (309 SE2d 135) (1983); see also *Williams v. State*, 174 Ga. App. 56 (1) (329 SE2d 226) (1985); *Mangrum v. State*, 155 Ga. App. 334 (1) (270 SE2d 874) (1980). The trial court is not required to provide a defendant with an in-court lineup of people resembling him, or to allow him to sit somewhere other than with his counsel at the defense table.

*Judgment affirmed. Beasley, C. J., and Ruffin, J., concur specially.*

BEASLEY, Chief Judge, concurring specially.

I agree that no reversible error occurred by way of the in-court identification of defendant by the victims, even though one of the two victims had never identified defendant prior to trial and was only asked to identify him when he was the sole black male in the courtroom and was sitting at counsel table. The other victim had picked

defendant out of a six-person photo spread shown to her at her home six days after the event. She was told beforehand that she had to be 100 percent certain before she made such an identification, and she did it within a few seconds. Defendant's photo was one of those in the spread shown to the two victims, independently, because the investigator had developed him as a suspect.

At trial, counsel asked the court to allow defendant to sit out in the courtroom with other black males who were available to be brought in and to have the female victim asked the question of identification under these circumstances. Counsel recognized her identification as crucial because she had earlier picked him out. In support of this request defendant cited *United States v. Archibald*, 734 F2d 938 (2nd Cir. 1984), which was clarified in an order in 756 F2d 223 (2nd Cir. 1984). Even if that court's view were to be followed, it would not apply to this case because defendant did not move prior to trial for any such procedure, a condition enumerated in *Archibald*.

We are bound in this case by *Ralston v. State*, 251 Ga. 682 (309 SE2d 135) (1983), which I believe is not materially distinguishable. See also *Yancey v. State*, 232 Ga. 167 (205 SE2d 282) (1974), for the applicable principles of constitutional law.

Although showing defendant to victims at trial as the only possible perpetrator suggests the answer to each of those who are called to identify him, I do not conclude that this procedure tainted the identifications in this case. The victims had extensive opportunity to observe defendant in their separate encounters with him during the event culminating in the crime, they gave descriptions which led to his selection as the only suspect, and they were certain in the courtroom that defendant was the person who committed the robbery.

The male victim, who had not identified defendant from the photo spread, testified that when he came to the courthouse he "looked at [defendant] and [he] right away saw that was the person." He explained that "sometime when you see somebody in person, you know, you can see somebody better than, you know, when you're looking at, you know, pictures. And pictures may be very old. He has peculiar ears. Okay. And he has his particular skin which I — you know, I can identify — I can identify eyes . . . And looking at the person sometime it could revive you the memories at that time what happened to you, who you were — looking at the person at that time, and you can see that that was the person or not." He was "sure, positive" that defendant was the person who robbed him. The female victim was also "sure."

As in *Ralston*, the victims were subject to full cross-examination about the bases for their in-court identifications and their ability to observe defendant during his involvement with them. There is little, if any, likelihood in this case that the in-court identifications were

based on, or tainted by, defendant being positioned where he was in the courtroom and being the only black male present. The circumstances do not establish a risk of "irreparable mistaken identification." *Kirby v. Illinois*, 406 U. S. 682, 691 (92 SC 1877, 32 LE2d 411) (1972).

RUFFIN, Judge, concurring specially.

Because one of the victims was able to positively identify Partridge in the pre-trial photo array and at trial, I concur in the judgment reached by the majority, but write separately to express my concerns with the inherently suggestive in-court identification by the other victim.

The majority holds that appellant's issue is foreclosed by our Supreme Court in *Ralston v. State*, 251 Ga. 682 (2) (309 SE2d 135) (1983). I believe *Ralston* is factually distinguishable, hence not controlling. In *Ralston* appellants contended that their in-court identification should have been excluded from evidence because they were two of only four black persons present in the courtroom. In the instant case it is undisputed that appellant was the only black participant in the trial, which makes the in-court identification more suggestive than in *Ralston*. Such suggestiveness is more odious than the traditionally touted "Hobson's choice,"[1] and should not be countenanced. *Williams v. State*, 174 Ga. App. 56 (1) (329 SE2d 226) (1985) and *Mangrum v. State*, 155 Ga. App. 334 (1) (270 SE2d 874) (1980), cited by the majority are equally unpersuasive.

In *Williams* appellant was one of only two black males at counsel's table. In *Mangrum* the court does not deal with the issue, but very cursorily holds that the issue is controlled by *Lowe v. State*, 136 Ga. App. 631 (1) (222 SE2d 50) (1975) (citing *Crews v. State*, 142 Ga. App. 319 (2) (235 SE2d 756) (1977)). A reading of *Lowe* reveals that the in-court identification there challenged was on the basis of a preliminary hearing identification which was alleged to be impermissively suggestive.

An in-court identification is inherently suggestive because everyone knows where the defendant usually sits during trial. An in-court identification based on appellant's position at counsel table, coupled with the undisputed fact that he was the only person of his race participating in the trial, heightens the suggestiveness of his in-court identification. If the suspect is thought to be Asian-American, and he

---

[1] Tobias or Thomas Hobson (c. 1544-1631) was a carrier at Cambridge who "kept a stable of forty good mounts" but would allow a customer no choice, requiring him to take the horse that stood nearest the stable door or none, "so that every customer was alike well served . . . and every horse ridden with the same justice" (Spectator, No. 512). (Hobson's requirement was humane and fair. But it was so opposed to the spirit of the age, in which every gentleman insisted on preferential treatment, that it attracted great attention.)

is the only Asian-American in the courtroom seated with lawyers, his in-court identification as the culprit is indeed hollow; if the suspect is thought to be Native American, and he is the only Native American in the courtroom and seated at counsel's table, the in-court identification is indeed suspect; if the suspect is thought to be Italian-American, and the defendant is the only Italian-American in the courtroom and seated at counsel's table, the in-court identification lacks credibility. In each instance it is not only the in-court identification which is suspect, but the integrity of the judicial proceedings is equally suspect. Accordingly, what goes without saying, needs saying. Such a procedure is an ominous and omnivorous error affecting anything and everything in its path. It is a grass green error which beckons fairness and due process.

In *United States v. Wade*, 388 U. S. 218 (87 SC 1926, 18 LE2d 1149) (1967), Justice Brennan, writing for the majority, found that "[t]he vagaries of eyewitness identification are well-known; the annals of criminal law are rife with instances of mistaken identification. Mr. Justice Frankfurter once said: 'What is the worth of identification testimony even when uncontradicted? The identification of strangers is proverbially untrustworthy. The hazards of such testimony are established by a formidable number of instances in the records of English and American trials.' . . . A commentator has observed that '(the) influence of improper suggestion upon identifying witnesses probably accounts for more miscarriages of justice than any other single factor — perhaps it is responsible for more such errors than all other factors combined.' [Cit.] Suggestion can be created intentionally or unintentionally in many subtle ways." Id. at 228-229. It is without question suggestive to ask a victim to identify the suspect when he is seated at the defense table and the only person of his race in the courtroom.

It is the duty of appellate judges to make concessions to stare decisis. It is a healthy and worthwhile doctrine which has grown gracefully with the law. But that doctrine compels courts to look forward as well as backward.

As courts look backward it is indeed comforting to realize that the law has been, and is, firm with respect to in-court identification. See, for example, *Fambrough v. State*, 146 Ga. App. 328 (4) (246 SE2d 384) (1978), and that line of cases where the in-court identification sprang from an independent and untainted source. It is that line of cases which gives those cases cited by the majority efficacy. I would preserve that authority.

As courts look forward, unfairness should not be exalted over fairness because of a doctrine's history and longevity. Accordingly, where the in-court identification is the victim's initial effort at identification, or where there has been a pre-trial photo array, I would, under the aegis of fairness, require a different mode of proof. That

mode could even take place pretrial. But whatever form such proof takes, I would leave it to the wisdom and experience of trial judges to fashion a method that conforms with fairness based on the totality of the circumstances.

DECIDED SEPTEMBER 7, 1995 —
RECONSIDERATION DENIED SEPTEMBER 22, 1995 —

*Saia, Richardson & Meinken, Judy M. Chidester,* for appellant.
*Johnnie L. Caldwell, Jr., District Attorney, Daniel A. Hiatt, Assistant District Attorney,* for appellee.