## A08A1900. ROBINSON v. THE STATE.
(676 SE2d 770)

BARNES, Judge.

Following a jury trial, Lemanuel Robinson was convicted of burglary, two counts of kidnapping, three counts of armed robbery, two counts of possession of a firearm during the commission of a crime, and giving a false name. He appeals now from the denial of his motion for new trial contending that the evidence was insufficient to support his convictions, the trial court permitted improper identification testimony and improperly charged the jury in violation of his constitutional rights, and the trial court erred in denying a new trial based on newly discovered evidence. He also contends that trial counsel was ineffective. Following our review and because the jury charge on identification was harmful error, for the reasons set forth, we reverse this case and remand it for a new trial.

> On appeal from a criminal conviction, the evidence must be construed in the light most favorable to the verdict, and the appellant no longer enjoys a presumption of innocence. An appellate court determines only the legal sufficiency of the evidence adduced below and does not weigh the evidence or assess the credibility of the witnesses.

(Citations and punctuation omitted.) *Brown v. State*, 265 Ga. App. 613 (594 SE2d 770) (2004). To sustain a conviction, the evidence must be sufficient to enable a rational trier of fact to find the appellant guilty of the crimes charged beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

So construed, the evidence shows that on October 14, 1999, at approximately 8:00 p.m., the victim stepped outside his home to get a cell phone from his truck. He was approached by Robinson and another man, and Robinson put a gun to the victim's head while his accomplice looked through the victim's pockets. They pushed the victim to the ground, told him to be quiet, and continued searching his pockets. They picked the victim up, kept the gun to his head, and walked him into the house. The victim's wife and young son were inside, and the victim begged the men not to "mess with" his family. The victim's wife was in the bedroom on the telephone when the men entered the room. She screamed and threw the telephone receiver, which Robinson retrieved and hung up.

The victim gave the accomplice the keys to his safe, and the accomplice took the wife to the room with the safe. Robinson stayed in the room with the victim, pushed him to the floor, and tried to cover his head with a blanket. The telephone was ringing constantly, so Robinson answered it, handed it to the victim, and said "Tell them we just want the money." The victim told his friend on the telephone to call them back. The accomplice came back into the room with the phone and told Robinson "we got it . . . come on." Robinson took the bedroom telephone with him, and the victim heard the men snatch the kitchen telephone from the wall when they were leaving. At trial, the victim identified Robinson as the man who put the gun to his head. The wife testified that the accomplice had a shirt over his head, but that she had a full-faced view of Robinson, and she positively identified him at trial. When police arrived they dusted for fingerprints and discovered the missing telephones in a yard "down the road."

On October 20, 1999, police investigated a similar robbery. The victim, who died before the trial, was confronted by two men as he approached his residence. The men pointed guns at him and ordered him to lie on the ground, while one of the robbers went through his pockets and took his wallet which contained $286. After the men took his wallet, they took the keys from his car's ignition and left. The victim said that before he was robbed, he had noticed two men on bicycles, but did not pay much attention to them. He told police he was sure that the men on the bicycles were the same men who robbed him. Police put out a BOLO for the suspects, and an officer with the Medical College of Georgia noticed two men on bicycles who matched the description shove something into a mailbox. The men were stopped and searched; no weapons were found but police recovered $286 in cash. The officer identified Robinson as one of the men he stopped. Robinson later confessed to the October 20 robbery, but denied using a gun.

Approximately one week after the second robbery, the earlier victims identified Robinson as their robber after seeing a newspaper story about the second robbery. The pictures of both men arrested for the robbery were included with the story. The wife only identified Robinson as one of the men who robbed them, but the victims said that both men were the same two who robbed them. Robinson was then charged with the first robbery.

The trial was held in March 2000, and although verification of the one print police lifted from the two telephones was pending, the investigator testified that the print did not match Robinson or his co-defendant. Robinson was found guilty on all charges, and sentenced to twenty years for burglary and the two kidnappings, life for each of the three robberies, and five years for each count of

possession of a firearm during the commission of a crime. The five-year sentences were to run consecutively with the first armed robbery, and the other sentences were concurrent.

Robinson filed a motion for new trial, and at the June 21, 2004 hearing on the motion, the investigator who sent the fingerprints to the crime lab for verification testified that the fingerprint belonged to Moses Martinez, who was then incarcerated for another armed robbery. Martinez refused to testify at the new trial hearing, invoking his Fifth Amendment rights. But he said he did not know Robinson and had never met him before that day. Robinson informed the trial court that he intended to amend his new trial motion based on newly discovered evidence.

Following his amended motion for new trial, in which he alleged, among other things, ineffective assistance of counsel, improper charge on identity, and newly discovered evidence, another hearing was held on July 11, 2007, at which time Martinez was informed that the statute of limitation had run for the home invasion robbery and he could not be charged with the crime. He testified that Robinson was not involved in that robbery, and that he had first met Robinson in 1999 at the county jail. Martinez testified that he was involved in the robbery of the couple with another man, but that he was driving and never went inside the house. He further testified that his fingerprints were on the telephone because he threw it out the window of his car. The prosecutor testified regarding the fingerprint analysis that he presented Robinson's counsel with the option of a continuance since the fingerprint verification was not back from the laboratory at the trial date. He also testified that he told counsel that Robinson's co-defendant had information that might connect the print to someone else. Trial counsel declined to continue the trial. In a lengthy, well-reasoned order, the trial court denied the motion for new trial, and Robinson appeals.

1. Regarding Robinson's challenge to the sufficiency of the evidence, we find that the evidence supports his conviction under the standard set forth in *Jackson*, supra; *Hawkins v. State*, 254 Ga. App. 868, 869 (563 SE2d 926) (2002). The victims' identification of Robinson in the first robbery, and his statement confirming that he participated in the second robbery provided direct evidence linking him to the crime, "and the credibility of the victim is solely a matter to be resolved by the jury. [Cit.]" *Hawkins*, supra.

2. Robinson first contends that the trial court permitted improper identification testimony and improperly charged the jury to evaluate the "level of certainty" of the witnesses' identification.

Robinson does not, however, articulate what was improper about the identification from the three witnesses. Although he argues that there was hearsay identification by the victim of the second robbery,

that victim, who died before the trial, never identified Robinson, and, in fact his statement, introduced at trial, was that he could not identify the men who attacked him.

To the extent that Robinson is arguing that his identification was somehow tainted because he was identified only after his picture ran in the newspaper,[1] there is no evidence that the police or any other state actors were involved in the couple's identification of Robinson. In *Lyons v. State*, 247 Ga. 465, 466-467 (277 SE2d 244) (1981), our Supreme Court rejected Lyons' attempt to invoke the protections of the Fourteenth Amendment when the confrontation procedure was initiated, as in this case, by the witnesses instead of the police. We thus ascertain no error.

Robinson also complains that the trial court improperly charged the jury on the witnesses' "level of certainty" regarding their identification. During its charge to the jury, the trial court instructed that in assessing the reliability of the witnesses' identification, one factor to consider is the "level of certainty shown by the witness about his or he[r] identification." Approximately five years later, this standard was rejected by *Brodes v. State*, 279 Ga. 435 (614 SE2d 766) (2005), in which our Supreme Court found that it could "no longer endorse" the pattern jury instruction on the witness's "level of certainty," and "advise[d] trial courts to refrain from informing jurors they may consider a witness's level of certainty when instructing them on the factors that may be considered in deciding the reliability of that identification." Id. at 442. The Court acknowledged the "critical importance of accurate jury instructions as 'the lamp to guide the jury's feet in journeying through the testimony in search of a legal verdict.' " Id.

In *Brodes*, the Court noted that "the only evidence connecting Brodes to the crimes was the eyewitness identification of him by the two victims." Additionally, the Court considered that witnesses had not given the police a physical description of the perpetrator, were under stress while being robbed at gunpoint in the night time, the defendant was a stranger to the victims, one of the victims was unable to pick the defendant's photograph from a photographic array, and the other victim could only describe the weapon that was used. Id. Nevertheless, both victims stated at trial that they were positive the defendant was the robber. Id. at 437.

Likewise here, Robinson was linked to the crime only by the witnesses' identification made one week after the crime, from photographs in a newspaper article identifying Robinson as the

---

[1] See *Neil v. Biggers*, 409 U. S. 188, 199 (93 SC 375, 34 LE2d 401) (1972) (suggestiveness of an identification procedure used by police applies only to state action).

perpetrator of another robbery. Further, there is no evidence that on the night of the robbery the couple provided the police with a description of the perpetrators, such as age, height, or clothing. Nor was there any other identification, such as a photographic array, before trial.

Under these circumstances, we cannot say that the "level of certainty" instruction was harmless. As a result, we must reverse and remand this case to the trial court for a new trial. *Brown v. State*, 277 Ga. App. 396 (2) (626 SE2d 596) (2006).

3. Our holding in Division 2 renders Robinson's remaining enumerations of error moot.

*Judgment reversed and case remanded. Johnson, P. J., and Phipps, J., concur.*

DECIDED MARCH 26, 2009.

*William M. Fleming*, for appellant.

*Rebecca A. Wright, District Attorney, Charles R. Sheppard, Madonna M. Little, Assistant District Attorneys*, for appellee.