S12A0674, S12X0675. CHATMAN v. BROWN; and vice versa.
(733 SE2d 712)

MELTON, Justice.

In May 1999, a jury found Derrick Brown guilty of kidnapping with bodily injury, aggravated assault upon a person 65 years or older, robbery by force, and burglary in connection with the beating and robbing of Margaret Logan. Brown's convictions were upheld on appeal. *Brown v. State*, 243 Ga. App. 430 (533 SE2d 453) (2000). In December 2008, Brown sought habeas relief based on this Court's then-controlling decision in *Garza v. State*, 284 Ga. 696 (670 SE2d 73) (2008), which established new factors for assessing the asportation element as required for kidnapping.[1] Brown also sought habeas relief

---

[1] *Garza* ultimately held that, with respect to the asportation element of Georgia's pre-2009 kidnapping statute, the movement necessary to establish asportation must be more than

based on *Brodes v. State*, 279 Ga. 435 (614 SE2d 766) (2005), alleging error in the jury instructions on the reliability of Logan's identification. Analyzing the *Garza* factors, the habeas court granted relief and set aside the conviction and sentence for kidnapping. The habeas court denied relief on *Brodes* grounds, finding that *Brodes* announced a new procedural rule that did not apply retroactively. In Case No. S12A0674, the warden appeals from the habeas court's ruling on the *Garza* issue, and in Case No. S12X0675, Brown appeals from the habeas court's ruling on the *Brodes* issue. For the reasons that follow, we reverse in Case No. S12A0674, and affirm in Case No. S12X0675.

### *Case No. S12A0674*

1. Viewed in the light most favorable to support the verdict, the record reveals that:

> Brown pushed his way into the home of the 83-year-old victim, hit her on the back of her head with a table lamp, twisted her arm behind her back to force her to the floor, dragged her into another room, tied her wrists and ankles together, and kicked her in the back. Brown and an accomplice then rummaged through the house and left with several guns and the victim's pocketbook.

As explained more fully below, these facts establish that the asportation requirement of *Garza* had been met. Under *Garza*, the question whether asportation was more than "merely incidental" to another crime is decided based on the consideration of four factors:

> (1) the duration of the movement; (2) whether the movement occurred during the commission of a separate offense; (3) whether such movement was an inherent part of that separate offense; and (4) whether the movement itself presented a significant danger to the victim independent of the danger posed by the separate offense.

---

"merely incidental" to other criminal activity, and four judicially created factors must be considered before a court can conclude that more than "merely incidental" movement had occurred. Id. at 702 (1). *Garza* has since been superseded by statute for offenses occurring after July 1, 2009. OCGA § 16-5-40 (b) (2). However, because the rule created in *Garza* constituted a substantive change in the law with respect to the elements required to prove the crime of kidnapping at the time that the case was decided, the rule became retroactively applicable to cases such as the instant case. See, e.g., *Hammond v. State*, 289 Ga. 142, 143 (1) (710 SE2d 124) (2011) (A substantive change in case law "includes decisions that remove certain conduct from the reach of criminal statutes") (citation omitted).

Id. at 702 (1).

Although a court must consider all of these factors, not all of the factors must necessarily be satisfied in order for the evidence to support a proper finding of asportation. See *Brown v. State*, 288 Ga. 902, 905 (708 SE2d 294) (2011) (evidence proved asportation when all but one of the factors supported the verdict). Here, "[w]hile the duration of the movement . . . may have been short, the other factors all support the verdict." (Citation omitted.) *Thomas v. State*, 289 Ga. 877, 880 (2) (717 SE2d 187) (2011). Indeed, with respect to the second factor, the moving of the victim was separate from the offenses of burglary and aggravated assault, as those offenses had already been completed before Brown ever moved the victim to a separate room. See OCGA § 16-7-1 (b) ("A person commits the offense of burglary . . . when, without authority and with the intent to commit a felony or theft therein, he or she enters or remains within an occupied . . . dwelling house of another"); OCGA § 16-5-21 (a) (2) ("A person commits the offense of aggravated assault when he or she assaults . . . with any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury"); *Henderson v. State*, 285 Ga. 240 (5) (675 SE2d 28) (2009) (movement of victims was not an inherent part of armed robbery where offense of armed robbery had already been completed before victims were moved). Similarly, the violent and forceful movement of the victim and tying her up in a separate room was not an inherent or necessary part of the burglary or the actual robbery of the victim's home. See *Brown*, supra, 288 Ga. at 905 (3) (kidnapping was not inherent part of the stealing of victim's car where "it was not necessary to move the victim in [the manner that he was moved] to steal his car, assault him with the handgun, and kill him"). Furthermore, the movement itself presented a significant danger to the victim because she was left isolated and tied up with no ability to defend herself, call for help, or escape the attacker who was in her home. See *Henderson*, supra, 285 Ga. at 245 (5) (kidnapping statute is "intended to address 'movement serving to substantially isolate the victim from protection or rescue' "). The evidence was sufficient to support a finding of asportation under *Garza*. See, e.g., id.

### Case No. S12X0675

2. Brown contends that, just as our decision in *Garza* constituted a substantive change in the law that can be applied retroactively to his case, this Court's decision in *Brodes v. State*, supra, also constituted a substantive change in the law that can be applied retroactively. Brown is incorrect.

In *Brodes*, this Court disapproved the use of jury instructions that authorized the jury to consider an eyewitness' "level of certainty" when deciding the reliability of the witness' identification of someone as the perpetrator of a crime. Id. at 442. However, the disapproval of such a jury instruction constituted a procedural, rather than substantive, change in the criminal law, as the new rule did not "alter[ ] the range of conduct or the class of persons that the law punishes." (Citation omitted.) *Schriro v. Summerlin*, 542 U. S. 348, 353 (II) (A) (124 SC 2519, 159 LE2d 442) (2004). In this regard, as the habeas court correctly concluded, because our decision in *Brodes* "involves an issue of state procedural law that does not rise to the level of constitutional significance, it cannot be the basis for a collateral attack [through habeas corpus]." *Bruce v. Smith*, 274 Ga. 432, 436 (3) (553 SE2d 808) (2001). See also OCGA § 9-14-42 (a) (authorizing state habeas corpus proceedings only where the petitioner asserts "a substantial denial of his rights under the Constitution of the United States or of this state"); *Harris v. State*, 273 Ga. 608, 610 (2) (543 SE2d 716) (2001) (although new procedural rule would be applicable to "all cases in the 'pipeline' — i.e., cases which [were] pending on direct review or not yet final [at the time that the case was decided] . . . it w[ould] not be appli[cable] to convictions challenged [collaterally] on habeas corpus") (citation omitted).

*Judgment reversed in Case No. S12A0674. Judgment affirmed in Case No. S12X0675. All the Justices concur.*

DECIDED OCTOBER 29, 2012.

*Samuel S. Olens, Attorney General, Mary Beth Westmoreland, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General,* for appellant.
*Zell & Zell, Rodney S. Zell,* for appellee.